FILED

Jun 14  12 51 PM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD KUHN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | NO. 3:02CV363 (EBB) |
| | : | |
| COMPUTER SCIENCE CORPORATION, | : | |
| | : | |
| Defendant. | : | JUNE 14, 2004 |

## DEFENDANT'S LOCAL RULE 56(a)(1) STATEMENT

Pursuant to Local Rule of Civil Procedure 56(a)(1), the defendant, Computer Sciences Corporation ("CSC"), hereby asserts the following material facts that are not in dispute for purposes of its Motion for Summary Judgment:

1. CSC hired plaintiff as a Desktop Technician effective January 1, 2000. In March 2000, plaintiff assumed duties as an ICMS Queue Administrator, with no change to his salary or benefits. (Deposition of Richard Kuhn ("Kuhn Dep.") at 22-23, 27.)

2. In or about May 2000, plaintiff began reporting to Fred Chavez, the Desktop Manager. (Kuhn Dep. at 24.)

3. As an ICMS Queue Administrator, plaintiff was responsible for handling the workflow of ICMS technicians. (Kuhn Dep. at 28.) In addition to performing functions as an ICMS Queue Administrator, plaintiff also acted as a Problem Resolution Queue Administrator,

handling the workflow of problem resolution technicians. (Kuhn Dep. at 32.) Plaintiff was "responsible for monitoring all of the calls that are log [sic] at the help desk; and to see that they are assigned, resolved and closed in a respectable time frame." (Plaintiff's Performance Appraisal of 3/31/00, Exhibit C.)

4. As a Queue Administrator, plaintiff's first task was to speak directly with the customer in an attempt to diagnose and resolve the problem over the phone. (Kuhn Dep. at 34, 53.) If plaintiff was unable to resolve a problem over the phone, he assigned the ticket to a Desktop Technician. (Id. at 53.) Plaintiff was also responsible for updating the status of each ticket and ensuring that the work on all tickets was completed by the Desktop Technicians. (Id. at 74, 96.)

5. Another of plaintiff's responsibilities was to collect Property Work Order forms ("PWO's") from the Desktop Technicians, ensure the accuracy and completeness of the information contained on the forms, complete any missing information and send the PWO's to CSC's "back office," which is responsible for maintaining those records. (Chavez Aff., ¶ 7.)

6. Fred Chavez became the Desktop Manager, and plaintiff's supervisor, in May 2000. (Chavez Aff., ¶¶ 3-4.)

7. In June 2000, on more than one occasion CSC's back office had sent numerous incomplete PWO's back to plaintiff for his completion. (See E-mails from B. Ahuja to R. Gaynor of 6/9/00 and 6/15/00, attached as Exhibit F.) First, on June 9, 2000, Brij Ahuja, the back office

activity coordinator at CSC, sent an e-mail to Rob Gaynor, a CSC Service Delivery Manager, indicating that, out of 382 PWO's he had received, 128 were incomplete and had been "sent back to Dick Kuhn by overnight FedEx to complete the missing information." (Exhibit F, at 2.) Subsequently, on June 15, 2000, Ahuja sent a second e-mail to Gaynor, indicating that he was sending back for completion another 86 incomplete PWO's. (Id. at 1.)

8. When plaintiff took a two-week vacation in July 2000, Chavez assigned Eric Anderson to perform the ICMS Queue Administrator duties during that period. (Chavez Aff., ¶ 9; Kuhn Dep. at 95.)

9. Chavez believed that Anderson performed the ICMS Queue Administrator duties more effectively than Kuhn. (Chavez Aff., ¶¶ 10-11.) Plaintiff did not know whether or not Anderson performed the Queue Administrator responsibilities well. (Kuhn Dep. at 95.)

10. In or about mid-August 2000, plaintiff attended a meeting with Fred Chavez, Rob Gaynor, Eric Anderson and others from CSC. (Kuhn Dep. at 117.) At that meeting, Chavez and/or Gaynor told plaintiff that they would further assist and teach plaintiff to help him succeed at CSC as Queue Administrator. (See Kuhn Dep. at 119-20.) They also told plaintiff that they needed him to work 8 a.m. to 5 p.m. because that was when most of the ICMS work came in from the customer. (Kuhn Dep. at 123.) Plaintiff agreed to work those hours. (Id.)

11. On August 24, 2000, Jerald Walker, a desktop technician, sent an e-mail to Derek Heard and Fred Chavez informing them of a problem caused by plaintiff's failure to update the

status of a ticket. (E-mails to and from J. Walker of 8/24/00, attached as Exhibit G.) Plaintiff did not always record the entire status of a job in a ticket, even though it was his job to do so, and even though such status information is helpful to avoid duplication of efforts. (<u>See</u> Kuhn Dep. at 139-40, 147-48.)

12. Sometime after the meeting in mid-August between plaintiff and other CSC personnel, plaintiff informed Chavez that he could not, after all, work 8 a.m. to 5 p.m. five days a week because he needed to pick his daughter up at school in the afternoon. (Kuhn Dep. at 125-26.) Accordingly, Chavez allowed plaintiff to work 8 a.m. to 5 p.m. on Mondays, Wednesdays and Fridays, and 6:30 a.m. to 3:30 p.m. on Tuesdays and Thursdays. (Kuhn Dep. at 125-26.) Ultimately, plaintiff's working hours reverted back to 6:30 a.m. to 3:30 p.m. five days a week. (Kuhn Dep. at 127.)

13. In or about January 2001, Chavez began preparing Performance Appraisals for all of his direct reports, including Kuhn. (Chavez Aff., ¶ 13.) In connection with that Performance Appraisal, plaintiff completed a self-evaluation, in which he did not identify any "Significant Accomplishments" for the year. (Performance Appraisal, attached as Exhibit J, at 1.)

14. In the Performance Appraisal, Chavez gave Kuhn an overall performance rating of "Needs Improvement." (Performance Appraisal, attached as Exhibit J, at 7.) Chavez noted that Kuhn displayed "inadequate problem solving skills" and failed effectively to "organize his or other technicians' work." (Exhibit J, at 3.) Chavez also indicated that Kuhn's "poor attitude and lack of

ownership in his tickets has caused unacceptable delays" for many customers, and that Chavez "can not rely on him to complete the work on time." (Exhibit J, at 4-5.) With specific regard to ticket closures, Chavez indicated that Kuhn "doesn't put forth the effort to explain the pertinent information...and the team often must go back to [him] to have him explain what happened on a call. (Exhibit J, at 4.) Chavez concluded that, "[g]iven [Kuhn's] inadequate performance CSC will implement a Performance Improvement Plan to address the issues noted above." (Exhibit J, at 6.)

15. CSC experienced "disappointing fiscal year fourth quarter earnings" in 2000, resulting from decreased demand for some of CSC's information technology services. (Memo from M. Morris to TMG Employees of 4/2/01, Exhibit K.) As a result, CSC took a number of actions to reduce costs, including reductions in travel and entertainment, use of consultants and contract labor, frozen internal capital expenditures and a reduction in workforce of about five percent. (Exhibit K.)

16. Plaintiff was among the CSC employees affected by the reduction in force, and was laid off on March 30, 2001. (Letter from G. Siekierka to R. Kuhn of 3/30/01, Exhibit L.)

17. Plaintiff filed two charges of age discrimination against CSC with the Connecticut Commission on Human Rights and Opportunities. The first charge, dated August 24, 2000, occurred while plaintiff was still employed with CSC. Plaintiff filed the second charge following his layoff. (Compl. ¶¶ 18, 23.)

18. Plaintiff does not know of any individuals at CSC whom he believed discriminated against him based on his age. (Kuhn Dep. at 221-22.)

19. The only information plaintiff identified to "support" his age discrimination claims were his allegations that: (1) CSC removed him from the Queue Administrator position and replaced him with Eric Anderson, a younger employee; and (2) CSC allegedly hired a younger person to work in plaintiff's department several weeks before plaintiff's layoff. (Kuhn Dep. at 211-12, 195-96.)

20. Plaintiff admitted at his deposition that he has no facts to support his claims of age discrimination. (Kuhn Dep. at 197, 214-15.)

THE DEFENDANT,
COMPUTER SCIENCES CORPORATION

By /s/
Albert Zakarian (ct04201)
Eric L. Sussman (ct19723)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Its Attorneys

## CERTIFICATION

      THIS IS TO CERTIFY that a copy of the foregoing was sent via overnight mail, postage prepaid, to: Francis D. Burke, Esq., Mangines & Burke, LLC, 1115 Main Street, Suite 708, Bridgeport, CT 06604.

                                                                      Eric L. Sussman